GUSTAVE BRUECK, Respondent, *v.* THE PHŒNIX INSURANCE COMPANY, Appellant.

*Policy of insurance against fire—when a renewal thereof is avoided by an increase in the risk, though the assured had no knowledge thereof.*

A policy of insurance issued by the defendant provided that "this insurance (the risk not being changed) may be continued for such further time as shall be agreed on, provided the premium therefor is paid and indorsed on this policy, or a receipt given for the same, and it shall be considered as continued under the original representations, and for the original amounts and divisions, unless otherwise specified in writing; but in case there shall have been any change in the risk, either within itself or by neighboring buildings, not made known to the company by the assured, at the time of renewal, this policy and renewal shall be void."

In an action to recover for a loss occurring after a renewal of the policy,— *Held,* that if there had been any change in the risk, increasing the hazard, after the first insurance and before the renewal was delivered, *whether known or not known to the plaintiff,* and it was not made known to the defendant at the time of the renewal, the policy and the renewal thereof was void, and no recovery could be had thereon. (Brady, J., dissenting.)

Appeal from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover the damages caused by a fire which destroyed certain stock and materials which were claimed by the plaintiff to have been insured, at the time of the fire, by the defendant. The fire occurred at Nos. 315 to 321 East Twenty-second street, in New York city, on April 18, 1877, in a large five-story building, in the third story of which the plaintiff manufactured fans. On April 7, 1876, the defendant issued its policy of insurance to one A. Hoegg, against loss or damage by fire to the amount of $1,500, on the stock and materials used in the manufacturing of fans on said premises, for the period of one year from that date. On January 10, 1877, the interest of the said Hoegg was, with the consent of the defendant, assigned to the plaintiff.

Herbert C. Plass, a man who had for years been an insurance broker in the city of New York, acted as the agent of the insured in procuring this policy, and as the plaintiff's agent in obtaining the defendant's consent to the said assignment, and afterwards in obtaining a certificate of the renewal of the policy.

At about the time the policy was issued, the defendant caused the premises (where the insured property was kept) to be surveyed by Mr. Mayer. A few days after the delivery of the certificate of renewal, the defendant had the premises re-surveyed by Mayer, who found, and reported to the defendant, that the risk had been changed since the policy was issued, and before the renewal was applied for. In consequence of this change of risk, the defendant sent for Mr. Plass, and three days thereafter, on April 16, 1877 (two days before the fire), Mr. Plass called upon the company. The defendant required a greater premium to continue the insurance, but Mr. Plass declined to give it. The defendant then demanded the renewal certificate to be returned, and it was claimed by it on the trial that Mr. Plass promised to do so, and agreed that the policy should be considered canceled.

The defendant had no notice of the change in the risk, when the renewal receipt was given.

*H. C. M. Ingraham,* for the appellant.

*B. F. Watson,* for the respondent.

Barrett, J. :

I am unable to concur in the second point discussed by my brother Brady. In my judgment the refusal to charge as requested by the defendant's counsel:

"That if there was any change in the risk, increasing the hazard after the first insurance and before the renewal was delivered, *whether known or not known to the plaintiff*, and it was not made known to the defendant at the time of the renewal, then this policy is void, and the plaintiff cannot recover upon it," was error. It was provided in the policy as follows:

"This insurance (*the risk not being changed*) may be continued for such further time as shall be agreed on, provided the premium therefor is paid and indorsed on this policy, or a receipt given for the same, and it shall be considered as continued under the original representation, and for the original amounts and divisions, unless otherwise specified in writing; *but in case there shall have been any change in the risk, either within itself or by neighboring buildings, not made known to the company by the assured, at the time of renewal, this policy and renewal shall be void.*"

This language is unambiguous—"any change in the risk" not "any change in the risk *known to the insured*." The change referred to is, of course, such as increased the risk. (*Parker* v. *Arctic Fire Ins. Co.*, 59 N. Y., 1.) But of such a change, the plaintiff under his contract could not plead ignorance. The provision cited would become practically valueless, if the insured could escape its force and effect by shutting his eyes to his own affairs, neglecting his business or other inactivity. Nor were the defendants bound to prove a *scienter*. If they established to the satisfaction of the jury such a change as increased the risk, the renewal fell. As was said in *Parker* v. *Arctic Fire Ins. Co.*, *supra*, "if *notice was not given*, the assured would lose the benefit of the contract, if it *turned out that the risk was increased thereby*." This is in accordance with the spirit as well as the letter of the contract. The parties fully understood their respective rights under the original policy. The renewal was predicated upon an unaltered *status*. The provision requiring the insured, as a prerequisite to a valid renewal, to make known to the company any

change in the risk, was for the express purpose of throwing upon him the burden of knowledge. He was bound to inform himself upon the subject before applying for a renewal. This was not unreasonable, considering his facilities for information as to his own property and business. What was important to the company was *the fact* as to a change. This provision was intended to obviate any necessity for inquiry upon its part, every time the policy was renewed, and to compel the insured to speak if there was anything of importance to be said. Under this, the company was not bound to make any investigation or inquiry as to a change in the risk. It was entirely justified in resting upon the contract and assuming, in the absence of notice, that the condition of things contemplated by the policy remained unchanged.

Nor am I entirely prepared to concur in the view taken of the insurance broker's authority. It seems difficult to distinguish the case on this head from *Standard Oil Co.* v. *Triumph Ins. Co.* (64 N. Y., 85). The same doubts apply to the exclusion of the evidence offered as to custom. But without passing definitively upon these latter questions, I think there should be a new trial because of the refusal to charge as requested with respect to the change in the risk.

DAVIS, P. J.:

The application for the renewal, without notice of any change in the risk, taken in connection with the language of the policy, was, in my judgment, in legal effect a warranty on the part of the assured that no change, substantially increasing the risk, had taken place. It would make no difference in the effect of such warranty that a material change, increasing the risk, was in fact unknown to the assured. He undertakes that it does not exist, and not that he is ignorant of its existence, and he must be bound by his contract. For this reason, as well as for the views suggested by my brother BARRETT, I fully concur with him that a new trial must be granted on the exception to the refusal of the court to charge on this subject, as requested by defendant.

BRADY, J., dissenting:

This was an action upon a renewal policy of insurance issued by

the defendant to one A. Hoegg on April 8, 1876, for the term of one year, which was subsequently, and with the consent of the defendant, assigned to the plaintiff. The renewal was on April 4, 1877, for the term of one year, to wit, from April 7, 1877, to April 7, 1878.

On April 18, 1877, the property was destroyed by fire, of which the plaintiff gave due notice and proof of loss more than sixty days previous to the commencement of this action. The answer contains denials of material allegations, and sets up, as a defense, that before the making and delivery of the renewal, there was a change in the risk taken by it at the time of the issuing of the original policy, by which the risk was increased, and of which change no notice was given to it at the time of the renewal, or at any other time, and that it was wholly ignorant of such change. A great many exceptions in reference to evidence were taken upon the trial, and the jealous counsel for the defendant omitted no opportunity to secure, by exception, if valid, a rehearing, in case the plaintiff should succeed. Such of these exceptions as are deemed at all material will be noticed, of which it must be said, there are very few; the whole case depending substantially upon questions of fact. The chief reliance of the defendant was upon the failure of the plaintiff to secure the renewal by omitting to pay the premium before the fire, the change of risk, and his failure to advise them of it, and an alleged cancellation of the policy by it, by proper notice founded on such change. The first and second propositions were submitted to the jury by the learned justice presiding at the trial in terms clear and distinct, and the facts and circumstances bearing upon them presented by the evidence, on behalf of either of the litigants, were stated by him, and their effect, if found one way or the other, also stated. With regard to the first proposition, it must be said that payment of the premium, at the time of renewal, is not absolutely necessary to make the contract of insurance binding upon the company. It may be waived by a credit given, and whether a credit was given or not is a question to be submitted to the jury. (*Angell* v. *Hartford Fire Ins. Co.,* 50 N. Y., 171; *Church* v. *Lafayette Fire Ins. Co.,* 66 Id., 222.) The course indicated by these decisions was adopted by the learned justice presiding, and

the question whether the payment of the premium, in strict compliance with the terms of the policy, had been waived, was submitted on the evidence relating thereto, and decided in favor of the plaintiff. That is all that it is deemed requisite to say in regard to this element of the appeal.

In reference to the second proposition it must be said that in order to relieve an insurance company from the obligation to pay the loss of the insured where there has been a change in the risk of which they were not advised upon the renewal, it is necessary to establish more than the mere fact of such change; it must appear that the change actually increased the risk and that the insured knew it and suppressed the fact, or made a false representation in reference to it. In this case it appears that the plaintiff did not know of the increased risk and the jury have so found, that fact having been submitted to their consideration because they were instructed that if the risk were increased and the plaintiff knew it, the defendant was absolved from all liability; but if the jury thought upon the evidence that the risk was not increased, then the defendants were not relieved from the duty of paying the plaintiff's losses. This feature of the case was submitted with proper instructions to the jury as a question of fact, as already intimated, and they found in the plaintiff's favor. It is thought that the following authorities bear out the view expressed of this question: *Parker* v. *Arctic Fire Ins. Co.*, 59 N. Y., 1; *Gates* v. *Madison County Mutual Ins. Co.*, 5 Id. 469.

The asserted cancellation of the policy is sought to be established by proof of notice given to one Plass, who made application to the defendant for the renewal policy and who was paid by the defendant a commission for placing it. The notice by the defendant which was founded upon the asserted change in the risk was not communicated to the plaintiff by Plass. It was assumed by the learned judge in his charge that Mr. Plass had no authority from the plaintiff to cancel the policy or to act for him in reference to such cancellation, and that the plaintiff was therefore entitled to notice of the intention of the company to cancel the policy, and also to a reasonable time to re-insure. There was no exception taken to this statement of the law, nor

was there any request made to submit to the jury the question whether Mr. Plass was the agent of the plaintiff, although perhaps that point arises upon the offer of the defendant in relation to the custom regulating the intercourse of agents of the insured and insurance companies, and the motion to dismiss the complaint upon the ground that the company had terminated the policy by notice to the plaintiff before the fire.

It appears that Mr. Plass was spoken to by the plaintiff in reference to the renewal and that he was frequently asked to obtain insurance for the plaintiff, but was never invested with any authority beyond what was necessary to accomplish this service. Mr. Plass said (and he was examined on behalf of the defendant) in reference to the policy in question, that he did not obtain any instructions from the plaintiff as to its renewal, other than the order to obtain it. It appears also from the testimony that when Mr. Brueck wanted anything done in regard to his insurance, he sought him for that purpose, and it is quite clear from their intercourse that he had no general instructions of any kind. The plaintiff himself testified that Mr. Plass had no authority from him to cancel his policy, and it is apparent from the evidence of the former, that Mr. Plass was not created by him his agent, with full power to act for him, and that his authority was limited to the acts he was specially instructed to perform. It was for these reasons, doubtless, that the learned judge presiding took the ground upon the trial already mentioned, namely, that Plass had no authority to cancel or accept notice of the cancellation of the policy on behalf of the plaintiff. Assuming this to be the correct view of the relations between Plass and the plaintiff, the custom to which reference has been made is wholly immaterial. If Plass was the general agent of the plaintiff, authorized to secure and for placing and keeping upon the plaintiff's property a line of insurance, and thus endowed with general authority over the whole subject, such a custom as mentioned might be controlling on the authority of the decision in the case of *Standard Oil Co.* v. *Triumph Ins. Co.*, reported in 64 N. Y., 85. But, as already suggested, such relations did not exist. The custom referred to seems to be expressed in the following question :

" Q. In this country, is it the general custom when agents have

effected insurance with an insurance company for their principal, and the company sees fit to terminate the insurance, for the company to give notice to the agent who has effected such insurance?"

Which, being objected to, was excluded, unless notice of the custom was brought home to the plaintiff. The counsel for the defendant did not, however, assert, either directly or indirectly, that he could establish notice to the plaintiff of the custom or his knowledge of it, or bring it home to him. A custom or usage of trade should be so general that the parties dealing in reference to the subject to which it relates, must be assumed to have knowledge of it and therefore to have incorporated it in the contract made. Doubtless the defendant regarded another question which was excluded as an embodiment of the proposition just stated, which was as follows:

" Q. Is it the custom among the insured to place their insurance business in the hands of insurance brokers for the purpose of effecting insurance upon their property, and of receiving notices for them, of the termination of insurance upon their property?"

It was excluded for the same reason as the other question, namely; unless notice of the custom to which it referred was brought home to the plaintiff. The counsel for the defendant did not assert that he could comply with the condition suggested in the ruling of the presiding judge, and therefore relied upon the abstract proof of the custom only which the question revealed. The counsel for the defendant did not either pursue the subject thus introduced by further questions, which would probably have developed the extent or universality of the custom. The questions themselves are not sufficiently broad to indicate the universality suggested, without which, as already expressed, the custom would not be binding, and ought not to be binding upon the plaintiff.

The facts in reference to the notice upon which the defendant relied in this case, afford a striking illustration of the injustice which would be done by allowing a custom other than one universally known to defeat the plaintiff's claim. The notice was as follows:

" NEW YORK, April 13, 1877.

" Please call at this office, reference to risk of G. Brueck, Nos.

315 to 21 East 22d street. Risk very much changed since last survey. Yours resp'y,

"PHENIX INS. CO.

"B.

" To Herbert C. Plass, Esq.,

"71 Broadway,

"Room 75, city."

and was received by Plass on April 14, 1877. On April 16, the latter, in compliance with its request, went to the office of the company and had therein an interview with some of the officers, but which was not communicated to the plaintiff until after the fire had begun, Plass admitting, on the stand as a witness, that he sent no communication to the plaintiff in reference to it prior to the occurrence of the fire.

For these reasons the asserted cancellation of the policy amounted to nothing, and therefore did not release the defendant from the obligations incurred by the renewal. It is considered that these views embrace the real salient points of this controversy, and dispose of this appeal in favor of the plaintiff.

Judgment reversed ; new trial ordered ; costs to abide event.